UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| **ELIJAH DESHUNN BROWN** | **CIVIL ACTION** |
| **VERSUS** | **NO. 24-0725** |
| **SHERIFF TURLICH OF PLAQUEMINES PARISH, ET AL.** | **SECTION "E"(4)** |

## PARTIAL REPORT AND RECOMMENDATION

This matter was referred to a United States Magistrate Judge to conduct a hearing, including an evidentiary hearing if necessary, and to submit proposed findings and recommendations for disposition pursuant to 28 U.S.C. § 636(b)(1)(B) and (C), § 1915e(2), and § 1915A, and as applicable, 42 U.S.C. § 1997e(c)(1) and(2). Upon review of the entire record, the Court has determined that this matter can be disposed of without an evidentiary hearing.

### I.     Factual Background

Plaintiff Elijah Deshunn Brown ("Brown") is a federal pretrial detainee currently housed in the Plaquemines Parish Detention Center ("PPDC") in Pointe a La Hache, Louisiana. ECF No. 10, ¶II(A), at 2; *id*., ¶III(A), at 4; ECF No. 10-1, at 1. Brown filed this *pro se* and *in forma pauperis* complaint pursuant to 42 U.S.C. § 1983 against defendants Plaquemines Parish Sheriff Turlich, Warden Denise Narcisse, Lt. Ashton Paxton, and Deputy Robin. ECF No. 10, ¶III(B)-(E), at 5. Brown alleges that he is housed in PPDC because he needs treatment for his medical problems, including a history of congestive heart failure for which he now has a left ventricular assist device ("LVAD"). ECF No. 10-1, at 1. He alleges that he is in administrative segregation for disciplinary reasons. *Id*. Brown states that he was told he will remain in isolation until he leaves PPDC. *Id*. at 2. He complains that "they" make comments about him being a dog in a cage without an owner.

*Id*.  He also claims that he has limited telephone access to call home but gets extra chances to do so when other inmates sneak the phone to him.  *Id*.

Brown further claims that, while in administrative lockdown, he is supposed to be given 15 minutes per day to shower and be out of his cell.  *Id*.  However, he is held in his cell for 7 days and only allowed out once a week to shower, despite his medical issues and need for dressing changes.  *Id*.; ECF No. 10, ¶IV, at 5.  He also claims that, on a few occasions between October 2023 and April 2024, he used toilet water to bathe.  ECF No. 10-1, at 2; ECF No. 10, ¶IV, at 5.  Brown further states that he is supposed to get a dressing change kit every day or each time he showers, but he sometimes has had to wait 96 to 144 hours without a dressing change or shower. ECF No. 10-1, at 2.

He contends that Lt. Paxton, the Warden, and five others make up the administrative staff in charge of the segregation unit.  ECF No. 10-1, at 2.  Brown alleges that the administration is punishing him by serving him a "food loaf" for his meals, which is when all of the food is blended together and baked into a loaf.  *Id*. at 2, 5; ECF No. 10, ¶IV, at 5.  Brown claims that he filed grievances with the PPDC administration about his bandages and showers.  ECF No. 10-1, at 2.  For a brief time, they let him out every 72 hours and then went right back to waiting every 4 to 9 days.  *Id*.  He wrote the U.S. Marshals and the federal judge over his case in the Western District of Louisiana, but nothing has changed.  *Id*.

Brown further alleges that, on February 12, 2024, he was beaten by Lt. Paxton and Deputy Robin after he complained about the conditions of his confinement.  ECF No. 10, ¶IV, at 5.  Brown alleges that he exited the shower and told a guard that he was not going back to his cell until he spoke to someone about the conditions of his confinement.  ECF No. 10-1, at 3.  Brown further alleges that the guard called for someone, and that other guards then burst in yelling for Brown to

2

return to his cell. *Id*. Brown indicates that he refused so one of them grabbed him to force him into the cell. *Id*. Brown concedes that he began to "slightly" resist by laughing and walking in the opposite direction. *Id*. Brown claims that one officer forced him to the ground so that they could pick him up and carry him into the cell. *Id*. He also claims that once he got into the cell, Lt. Paxton continued to twist his arm while he was laying on his stomach. *Id*. When Lt. Paxton let go, he then punched plaintiff in the jaw stating, "you think this is funny, how about this?" among other comments. *Id*. Brown acknowledges that he talked back to Lt. Paxton which prompted the Lieutenant to twist Brown's arm again and Deputy Robin then punched Brown in the face while grabbing Brown's other arm, cursing and threatening to harm Brown. *Id*. Brown claims that he told the officers he would stop laughing but Lt. Paxton kicked him on the left side of his back near where the LVAD pump is inside of his heart, causing him to gasp for air. *Id*. at 3, 4.

Brown claims that the Sheriff and Warden are responsible for letting the jail administration place him on administrative lockdown, for feeding him the "loaf," and for keeping him in his cell without sufficient breaks. *Id*. at 5. He claims the Sheriff owns the jail and is responsible for jail officials' violations. *Id*. He claims that the Sheriff has allowed the Warden and her administration to repeatedly violate his rights, causing him to lose touch with his family because of lack of communication. *Id*. He contends that as a result of him being in jail, his mother attempted suicide, his girlfriend turned to drugs, and his grandmother died because of the stress of knowing the conditions of his confinement. *Id*.

As relief, Brown seeks $100,000 in compensation from the Sheriff for emotional turmoil and $10,000 from each of the other defendants. *Id*. Brown also wants the two deputies fired and criminally charged and for the Warden to resign. *Id*. at 5; ECF No. 10, ¶V, at 6.

## II.     Standards of Review for Frivolousness

Pursuant to 28 U.S.C. § 1915(e)(2) and § 1915A and 42 U.S.C. § 1997e(c), the Court is required to *sua sponte* dismiss cases filed by prisoners proceeding *in forma pauperis* upon a determination that they are frivolous.  The Court has broad discretion in determining the frivolous nature of the complaint.  *See Cay v. Estelle*, 789 F.2d 318, 325 (5th Cir. 1986), *modified on other grounds*, *Booker v. Koonce*, 2 F.3d 114 (5th Cir. 1993).  However, the Court may not *sua sponte* dismiss an action merely because of questionable legal theories or unlikely factual allegations in the complaint.

Under this statute, a claim is frivolous only when it lacks an arguable basis either in law or in fact.  *Neitzke v. Williams*, 490 U.S. 319, 324-25 (1989); *Talib v. Gilley*, 138 F.3d 211, 213 (5th Cir. 1998).  "A [claim] lacks an arguable basis in law if it is based on an indisputably meritless legal theory, such as if the complaint alleges the violation of a legal interest which clearly does not exist."  *Harper v. Showers*, 174 F.3d 716, 718 (5th Cir. 1999) (quoting *Davis v. Scott*, 157 F.3d 882, 889 (5th Cir. 1998)).  It lacks an arguable factual basis only if the facts alleged are "clearly baseless," a category encompassing fanciful, fantastic, and delusional allegations. *Denton v. Hernandez*, 504 U.S. 25, 32-33 (1992) (citing *Neitzke*, 490 U.S. at 327-28).  Therefore, the Court must determine whether the plaintiff's claims are based on an indisputably meritless legal theory or clearly baseless factual allegations.  *Reeves v. Collins*, 27 F.3d 174, 176 (5th Cir. 1994); *see Jackson v. Vannoy*, 49 F.3d 175, 176-77 (5th Cir. 1995); *Moore v. Mabus*, 976 F.2d 268, 269 (5th Cir. 1992).

### III. <u>Analysis</u>

#### A. <u>Claims Against Sheriff Turlich and Warden Narcisse</u>

Brown names Sheriff Turlich and Warden Narcisse as defendants, alleging that the Warden is liable under § 1983 is an administrator at the prison and that the Sheriff is liable under § 1983 because he "owns" PPDC and is responsible for the actions of the Warden and jail administrators. Brown, however, has not alleged any personal action or inaction or other basis on which to hold the Sheriff or the Warden liable under § 1983.

To recover under § 1983, Brown must identify the constitutional violation for which each defendant is allegedly responsible. *Flagg Bros., Inc. v. Brooks*, 436 U.S. 149, 156 (1978). Also, proof of an individual defendant's personal involvement in the alleged wrong is a prerequisite to liability under §1983. *Douthit v. Jones*, 641 F.2d 345, 346 (5th Cir. 1981). Thus, supervisory officials, like Sheriff Turlich and Warden Narcisse, cannot be held responsible pursuant to § 1983 under any theory of *respondeat superior* or simply because an employee or subordinate allegedly violated the plaintiff's constitutional rights. *See Alton v. Tex. A&M Univ.*, 168 F.3d 196, 200 (5th Cir. 1999); *see also*, *Oliver v. Scott*, 276 F.3d 736, 742 (5th Cir. 2002) ("Section 1983 does not create supervisory or respondeat superior liability."). A defendant is liable under § 1983 only if he or she had personal involvement in the alleged unconstitutional act. *Douthit*, 641 F.2d at 346.

In this case, Brown does not allege that Sheriff Turlich or Warden Narcisse were personally involved in or aware of any alleged violation of his constitutional rights. Brown also does not allege that he advised the Sheriff or the Warden personally about any unconstitutional condition to which he was exposed. The fact that Brown claims to have filed grievance complaints at the prison to which he may have received an unfavorable response from the Warden or Sheriff does not render either official liable under § 1983. *Bonneville v. Basse*, 536 F. App'x 502, 503 (5th Cir.

5

2013) ("A prisoner does not have a constitutionally protected liberty interest in having 'grievances resolved to his satisfaction.'") (quoting *Geiger v. Jowers*, 404 F.3d 371, 374 (5th Cir. 2005)); *Propes v. Mays*, 169 F. App'x 183, 184-85 (5th Cir. 2006) (same).

Similarly, Brown has not indicated that he has suffered any injury directly resulting from an order, training, or unconstitutional policy implemented by Sheriff Turlich or Warden Narcisse to state a basis for either officials' supervisory liability under § 1983. *See Johnson v. Moore*, 958 F.2d 92, 94 (5th Cir. 1992); *Thompson v. Upshur Cnty.*, 245 F.3d 447, 459 (5th Cir. 1991); *Thompkins v. Belt*, 828 F.2d 298, 304 (5th Cir. 1987); *see also*, *City of St. Louis v. Praprotnik*, 485 U.S. 112, 124-25 (1988). Thus, to the extent Brown included the Sheriff and the Warden as defendants in their respective supervisory roles over other jail officials, this is not an appropriate basis to impose liability under § 1983.

In summary, Brown has not alleged a personal action or connection that would render Sheriff Turlich or Warden Narcisse liable under § 1983 or liable for the actions or inactions of other subordinate prison personnel. For these reasons, Brown's claims against the Sheriff and the Warden should be dismissed under § 1915 and § 1915A as frivolous and otherwise for failure to state a claim for which relief can be granted.

### B. Restrictions in Administrative Lockdown

Brown concedes that he is housed in administrative lockdown for disciplinary reasons, but complains that he is not allowed adequate time out of his cell for showers. He also claims that this has impacted his ability to obtain regular bandage changes related to his ongoing medical treatment, which includes a medical device.

It is a basic premise that prison officials cannot use conditions to punish a pre-trial detainee. *Bell v. Wolfish*, 441 U.S. 520, 535 (1979). The proper inquiry is whether the complained of

conditions amount to punishment of the detainee. *Id*. "[A] pre-trial detainee cannot be subjected to conditions or restrictions that are not reasonably related to a legitimate governmental purpose." *Hare v. City of Corinth, Miss.*, 74 F.3d 633, 640 (5th Cir. 1996). To determine whether a condition of detention amounts to punishment, the Court must consider whether the condition is imposed for the purpose of punishment or whether it is incident to some legitimate governmental purpose and whether it is excessive in relation to that purpose. *Bell*, 441 U.S. at 538. However, for all detainees, "'[t]here is, of course, a *de minimis* level of imposition with which the Constitution is not concerned.'" *Bell*, 441 U.S. at 539 n.21 (quoting *Ingraham v. Wright*, 430 U.S. 651, 674 (1977)). The Constitution requires that prison officials provide prisoners with only reasonably adequate food, shelter, and sanitation. *Gates v. Cook*, 376 F.3d 323, 332 (5th Cir. 2004) (citing *Farmer v. Brennan*, 511 U.S. 825, 832 (1994)). Courts have repeatedly held that the Constitution does not mandate prisons with ideally comfortable surroundings or commodious conditions, but it also does not permit inhumane ones. *Talib*, 138 F.3d at 215 (citing *Rhodes v. Chapman*, 452 U.S. 337, 349 (1981)); *accord Hernandez v. Velasquez*, 522 F.3d 556, 560 (5th Cir. 2008); *Harper*, 74 F.3d at 719 (quoting *Woods v. Edwards*, 51 F.3d 577, 581 (5th Cir. 1995)).

To state a plausible claim arising from the conditions of confinement, a plaintiff must allege that a defendant has intentionally deprived him of life's basic necessities, such as food or sanitation, and the deprivation objectively is "sufficiently serious" that it poses "a substantial risk of harm" to his health or safety. *Farmer*, 511 U.S. at 847; *Alexander v. Tippah Cnty.*, 351 F.3d 626, 630 (5th Cir. 2003) (quoting *Woods*, 51 F.3d at 581). A prison official cannot be held liable "unless the official knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Farmer*, 511 U.S. at 837. "'[D]eliberate

7

indifference' is a stringent standard of fault, requiring proof that a municipal actor disregarded a known or obvious consequence of his action." *Southard v. Texas Bd. of Crim. Just.*, 114 F.3d 539, 551 (5th Cir. 1997) (quotations omitted).

Brown has not alleged a condition or action by a particular prison official that would amount to a constitutional violation under these requirements. Brown's main complaints involve the food loaf, delayed or inconsistent shower opportunities, and limited telephone privileges while in disciplinary lockdown. These concerns, while not to Brown's liking, do not rise to a level of seriousness constituting a constitutional violation. *See Williams v. Bartel*, No. 05-CV-0021, 2007 WL 2156575, at *2 (W.D. La. Jun. 18, 2007) ("[W]hile the Constitution requires that prison officials not deprive inmates of the minimal civilized measure of life's necessities, including basic elements of hygiene and reasonable opportunities for exercise, the restriction placed on plaintiff while in confinement, i.e., limited visits, phone privileges, showers, and out of cell recreation, did not violate plaintiff's constitutional rights."); *see also Wilkerson v. Goodwin*, 774 F.3d 845, 855 (5th Cir. 2014) (recognizing that long-term placement in segregation, without more, is not atypical as a punishment).

In addition, Brown's complaints involving the alleged denial of certain privileges while in disciplinary lockdown, do not state a cognizable due process or other constitutional violation. In *Sandin v. Connor*, 515 U.S. 472, 481-83 (1995), the Supreme Court held that constitutionally protected liberty interests "will generally be limited to freedom from restraint which . . . imposes atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." *Sandin*, 515 U.S. at 484 (citations omitted). The deprivation of privileges, including telephone access and regular showers, however, does not present such an "atypical and significant hardship

on the inmate in relation to the ordinary incidents of prison life" to give rise to a due process violation. *Id.*

Brown's specific claims also fall short of stating a non-frivolous claim for relief. Brown claims that he endures insults and comments about him being a dog in a cage. An inmate's "[c]laims of hurt feelings, humiliation, and other heartfelt, yet objectively trivial indignities, are not of Constitutional moment." *Jackson v. Liberty Cnty.*, 860 F. Supp. 360, 363 (E.D. Tex. Jul. 26, 1994). Brown's alleged exposure to derogatory remarks and comments about his status do not rise to the level of a constitutional violation.

As to his complaints about the food loaf, constitutional standards require only that prison authorities provide an inmate with "sufficient nutritional value to preserve health." *Berry v. Brady*, 192 F.3d 504, 507 (5th Cir. 1999); *Green v. Farrell*, 801 F.2d 765, 770 (5th Cir. 1986) (quoting *Smith v. Sullivan*, 553 F.2d 373, 380 (5th Cir. 1977)). The Constitution does not require that convicted inmates be provided with food at particular temperatures or every culinary amenity which one may find desirable. *Wolfish v. Levi*, 573 F.2d 118, 125 (2d Cir. 1978), *rev'd on other grounds sub nom.*, *Bell*, 441 U.S. at 520; *Murray v. Matty*, 1985 WL 4948 at *1 (E.D. Pa. 1985). Brown does not allege that the food loaf, while not to his liking, failed to provide him with the necessary nutrition required by constitutional standards. *See Hammond v. Hamilton*, No. 21-3727, 2022 WL 4551864, at *5-6 (W.D. La. Sep. 8, 2022) (concluding that prison official serving inmate "seven days of food loaf" fell short of implicating a due process or liberty interest under *Sandin*), *report and recommendation adopted*, 2022 WL 4545118, at *1 (W.D. La. Sep. 28, 2022).

Brown also claims that he has inconsistent access to showers, something he believes should be provided to him daily. The Constitution, however, does not require daily or even weekly showers for pretrial detainees. *See Hamilton v. Lyons*, 74 F.3d 99, 106 n.8 (5th Cir. 1996) (holding

denial of visitation, telephone, recreation, mail, legal materials, sheets, and showers for a three-day period do not constitute cruel and unusual punishment); *see also Jaros v. Ill. Dep't of Corr.*, 684 F.3d 667, 671 (7th Cir. 2012) ("[L]imiting inmates to weekly showers does not violate the Eighth Amendment."). Denying an inmate regular showers, without more, does not amount to a constitutional "deprivation of the 'minimum civilized measure of life's necessities.'" *Hanson v. Richardson*, 06-0178, 2008 WL 818893, at *4 (N.D. Tex. Mar. 27, 2008) (quoting *Wilson v. Seiter*, 501 U.S. 294, 298 (1991)). While Brown claims that the sporadic showers impacted his bandage changes, he does not claim that either the delayed showers or bandages resulted in a physical injury or other compensable violation.

Even more compelling on review for frivolousness, Brown also has not alleged that any act by a defendant or the conditions of his confinement caused him serious harm or that there was a risk of serious harm, in the constitutional sense, arising from the restrictions he endures in disciplinary lockdown; and the court can perceive none under the circumstances he describes. In fact, Brown has not alleged any physical injury resulting from the food loaf, delayed showers – or delayed bandage changes, or limited telephone privileges. Mere emotional discomfort or distress caused to him is not compensable under §1983.

Under the Prison Litigation Reform Act of 1996 ("PLRA"), "[n]o Federal civil action may be brought by a prisoner confined in a jail, prison, or other correctional facility, for mental or emotional injury suffered while in custody without a prior showing of physical injury." 42 U.S.C. § 1997e(e). Absent any physical injury a plaintiff cannot recover compensatory damages in a conditions-of-confinement case. *See Geiger*, 404 F.3d at 375 ("Section 1997e(e) applies to all federal civil actions in which a prisoner alleges a constitutional violation, making compensatory damages for mental or emotional injuries non-recoverable, absent physical injury."). Thus, under

the PLRA, Brown's failure to allege a physical injury in connection with the conditions of his confinement justifies dismissal of his request for compensatory damages. *See Higgins v. Navarrete*, No. 20-20341, 2022 WL 543018, at *3 (5th Cir. 2022) (affirming district court's grant of summary judgment on the basis that the plaintiff failed to allege a physical injury as required by the PLRA to recover monetary damages); *see also Alexander*, 351 F.3d at 631 (affirming dismissal of prisoners' conditions-of-confinement claims under the PLRA where they alleged either no or only de minimis physical injury).

For the foregoing reasons, Brown's claims arising from the conditions of his confinement are frivolous and otherwise failed to present a claim for which relief can be granted. The claims should be dismissed for this reason pursuant to 28 U.S.C. § 1915, § 1915A, and as applicable, 42 U.S.C. § 1997e.

### C.     Claims of Excessive Force against Lt. Paxton and Deputy Robin

Brown alleges that, on February 12, 2024, he was beaten by Lt. Paxton and Deputy Robin during the incident when he refused to return to his cell. Brown claims that, after he refused to return to his cell, and because he resisted instructions and efforts to get him there, multiple deputies had to forcibly return him to his cell. He further alleges that, once he was in the cell, Lt. Paxton continued to twist his arm and, when Brown continued to talk back, Lt. Paxton punched him in the jaw. Deputy Robin also then punched Brown in the face while grabbing Brown's other arm. Brown claims that he told the officers he would stop laughing but Lt. Paxton then kicked him on the left side of his back near where the LVAD pump is inside of his heart, which caused Brown to gasp for air.

For pretrial detainees like plaintiff, claims of excessive force concern substantive due process rights under the Fourteenth Amendment. *Hare*, 74 F.3d at 639 ("The constitutional rights

11

of a pretrial detainee, on the other hand, flow from both the procedural and substantive due process guarantees of the Fourteenth Amendment.") (citing *Bell*, 441 U.S. at 520 (stating the State must distinguish between a pretrial detainee and convicted felon as the State cannot punish a pretrial detainee)). Force against a pretrial detainee is "excessive" and a violation of the Fourteenth Amendment when the force was objectively unreasonable. *Fairchild v. Coryell Cnty.*, No. 20-50237, 2022 WL 2733704, at *2 (5th Cir. 2022) (citing *Kingsley v. Hendrickson*, 576 U.S. 389, 396-70 (2015)).[1]

Several factors may be considered to determine the reasonableness of the force used: "the relationship between the need for the use of force and the amount of force used; the extent of the plaintiff's injury; any effort made by the officer to temper or to limit the amount of force; the severity of the security problem at issue; the threat reasonably perceived by the officer; and whether the plaintiff was actively resisting." *Kingsley*, 576 U.S. at 397. The court is to look only to the objective reasonableness of the force without regard to underlying intent or motivation. *Gonzalez v. Seal*, No. 13-34, 2013 WL 6244183, at *8 (E.D. La. Dec. 3, 2013) (citing *Graham*, 490 U.S. at 397). "[A] pretrial detainee can prevail by providing only objective evidence that the challenged governmental action is not rationally related to a legitimate governmental objective or that it is excessive in relation to that purpose." *Kingsley*, 576 U.S. at 398 (citing *Bell*, 441 U.S. at 540; *Block v. Rutherford*, 468 U.S. 576, 585-86 (1984)); *see also Andrew*, 2016 WL 447680, at *8

---

[1] In *Kingsley*, at 396-98, the Supreme Court concluded that the pretrial detainee need only show the force was "objectively reasonable," and expressly rejected the subjective standard used for convicted prisoners, *i.e.* that the plaintiff must prove that the use of force was not applied in good faith effort to maintain or restore discipline but, rather, was applied maliciously and sadistically to cause harm. *Andrew v. St. Tammany Par.*, No. 15-2105, 2016 WL 447680, at *7 (E.D. La. Jan. 15, 2016) (citing *Brown v. Gusman*, No. 15-1491, 2015 WL 6827260, at *3-4 (E.D. La. Nov. 6, 2015)), *report and recommendation adopted by* 2016 WL 430455, at *1 (E.D. La. Feb. 4, 2016). *Kingsley* indicates "the language of the [Eighth Amendment's Cruel and Unusual Punishment Clause and Fourteenth Amendment's Due Process Clause] differs, and the nature of the claims often differs. And, most importantly, pretrial detainees (unlike convicted prisoners) cannot be punished at all, much less 'maliciously and sadistically.'" *Kingsley*, 576 U.S. at 359-401 (citing *Ingraham*, 430 U.S. at 671-72; *Graham v. Connor*, 490 U.S. 386, 396 (1989)).

(citing *Thompson v. Beasley*, 309 F.R.D. 236, 247 (N.D. Miss. Jul. 13, 2015)) (discussing that while *Kingsley* used the disjunctive "or," courts post-*Kingsley* have framed the inquiry as "whether, from an objective point of view [defendant's] actions were rationally related to a legitimate, nonpunitive governmental purpose and whether his actions were excessive in relation to that purpose.").

Taking Brown's allegations on face value, he has alleged that he was in his cell, laying on is stomach, when the incident with Lt. Paxton and Deputy Robin occurred. He also alleges that he advised the officers that he would stop laughing but the officers continued to twist his arms, hit him in the face, and kick him. While he does not specifically speak of injuries, he does allege that the kick by Lt. Paxton was in proximity to his heart pump and caused him to gasp for air. Considering his allegations in the complaint and accepting them as true as the Court must do at this time, Brown has at least provided sufficient facts to state a non-frivolous claim of excessive force under the factors listed above. Brown claims that he told the officers he would stop resisting but the strikes to his body continued and left him gasping for air.

For these reasons, the claims against Lt. Paxton and Deputy Robin should be allowed to remain and proceed forward for further pretrial proceedings. If this recommendation is accepted, the undersigned will order service of summons be made on Lt. Paxton and Deputy Robin.

**IV.    Recommendation**

It is therefore **RECOMMENDED** that Brown's § 1983 claims against defendants Plaquemines Parish Sheriff Turlich and Warden Denise Narcisse be **DISMISSED WITH PREJUDICE** pursuant to 28 U.S.C. § 1915(e), § 1915A and as applicable 42 U.S.C. § 1997e as frivolous and otherwise for failure to state a claim for which relief can be granted.

It is further **RECOMMENDED** that Brown's § 1983 claims against defendants Plaquemines Parish Sheriff Turlich, Warden Denise Narcisse, Lt. Ashton Paxton, and Deputy Robin challenging the conditions of his confinement at the Plaquemines Parish Detention Center, specifically those alleging inadequate shower opportunities, access to telephone calls, and service of a food loaf while housed in administrative segregation be **DISMISSED WITH PREJUDICE** pursuant to 28 U.S.C. § 1915(e), § 1915A and as applicable 42 U.S.C. § 1997e as frivolous and otherwise for failure to state a claim for which relief can be granted.

It is further **RECOMMENDED** that Brown's § 1983 claims against defendants Lt. Ashton Paxton and Deputy Robin for use of excessive force on February 12, 2024, be allowed to proceed forward and remain referred to the undersigned Magistrate Judge for further pretrial proceedings.

A party's failure to file written objections to the proposed findings, conclusions, and recommendation in a magistrate judge's report and recommendation **within fourteen (14) days** after being served with a copy shall bar that party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the district court, provided that the party has been served with notice that such consequences will result from a failure to object. *Douglass v. United Servs. Auto. Assn.*, 79 F.3d 1415, 1430 (5th Cir. 1996).[2]

New Orleans, Louisiana, this 17th day of June, 2024.

_____
**KAREN WELLS ROBY**
**UNITED STATES MAGISTRATE JUDGE**

---

[2]*Douglass* referenced the previously applicable ten-day period for the filing of objections. Effective December 1, 2009, 28 U.S.C. § 636(b)(1) was amended to extend the period to fourteen days.